IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

UNITED STATES OF AMERICA )
)
vs. )
)
) Case No. 3-09-00240
)
)
CHRISTOPHER CONYERS, )
)
Defendant. )

---

**TRANSCRIPT OF PROCEEDINGS**
**January 4, 2012 - 11:00 a.m.**
**Motion to Withdraw**

---

**BEFORE THE HONORABLE SENIOR JUDGE JOHN T. NIXON**
**DISTRICT JUDGE**

---

**APPEARANCES:**

For the United States: SUNNY A.M. KOSHY
Assistant U. S. Attorney
961-A U. S. Courthouse
Nashville, Tennessee 37203

For the Defendant: PAUL J. BRUNO
Law Offices of Paul J. Bruno
218 Third Avenue North
Suite 200
Nashville, Tennessee 37201

WILLIAM I. SHOCKLEY
Attorney at Law
4505 Harding Road
Suite 126
Nashville, Tennessee 37205

---

CHARLOTTE H. SLOAN, RPR, CSR
Official Court Reporter
837-A U. S. Courthouse
Nashville, Tennessee 37203
Telephone: 615-726-0355

JANUARY 4, 2012

THE COURT: Ready to proceed in the United States of America vs. Christopher Conyers?

MR. KOSHY: Yes, sir.

MR. BRUNO: Yes, Your Honor.

THE COURT: What is the status?

MR. BRUNO: Your Honor, Paul Bruno for Mr. Conyers. I would like to address my motion first.

THE COURT: All right.

MR. BRUNO: Since I started representing Mr. Conyers, there has been from time to time some issues with Mr. Conyers that I think arise out of the need to just develop trust and confidence in me as his attorney. I was -- he had never met me before and I'm appointed to represent him and so it just took a little bit of time. And we've kind of gone back and forth since I've been representing him.

Last week I received a voice mail in the morning which indicated that he wanted me to withdraw off his case. And so I filed a motion. And then in the afternoon I received another voice mail which said that he had -- the information he had received was incorrect and he wanted me to stay on the case.

And so I met with him on Friday afternoon and he -- we had a conversation. And where we're at now, is he wants me to remain on the case; I want to remain on the case.

THE COURT: All right.

MR. BRUNO: And I told him that we needed to try to put this issue behind us and start focusing on the case and moving forward. And he's in agreement with that. So what I need to do is strike my motion, but I didn't want to strike it before today, because I wanted to kind of just clear the air and let the Court know that Mr. Conyers and I are on good terms and ready to proceed forward. And I told him you may want to ask him about that as well. So effectively I need to strike my motion and we're good moving forward. And that's it with my motion.

THE COURT: Okay.

**EXAMINATION**

**BY THE COURT:**

Q. Mr. Conyers.

A. Yes, sir

A. Is that a correct statement that Mr. Bruno made, that the two of you are communicating now and you're ready to move forward?

A. Yes, sir. What I was going to try to do was sit down and just have a long talk about it. Because I got -- I got trust issues. There's a cause and effect. And what I was doing was bringing stuff from my old -- from my last lawyer, Mr. Shockley, into, into this relationship with, with Mr. Bruno. And he like, you know -- and he like, he like you

**can't do that, you got to give me a chance and stuff and things of that nature. So we had -- we had a point in time where something had happened with the docket sheets. I really don't know. I just started receiving them, but certain entries were deleted for some reason. So he sent me something and told me I filed this motion; I filed a motion.**

**Q. But your communication is fine at this time?**

**A. Oh, yes, sir; yes, sir**

**Q. And you're ready to proceed?**

**A. Yes, sir.**

**Q. Okay, thank you.**

**THE COURT: Mr. Shockley.**

**MR. SHOCKLEY: Good morning, Your Honor. Bill Shockley for Mr. Conyers. In my motion I filed a copy of Mr. Conyers' letter that he sent me. We have had an up and down relationship. It's my understanding based upon his letter and our conversations that he no longer has trust in me and would prefer that I be relieved from the case, from his case. I have a somewhat different opinion, but it's -- I think I could be of assistance to his case. I'm willing to work with Mr. Bruno. But I do think that if Mr. Conyers' lack of trust in me is sufficient that it would interfere with the overall relationship if I were on the defense team, I think that would be a negative. And in any respect I think it's really up to Mr. Conyers at this point to simply state**

whether his opinion, his trust in me remains the same as it was when he wrote this letter.

THE COURT: All right.

THE DEFENDANT: Your Honor, I would like to -- I would respectfully want him to withdraw from my case.

EXAMINATION

BY THE COURT:

Q. You do not want Mr. Shockley representing you any longer?

A. No, sir.

Q. You think that it might be -- why don't we wait for a while and see how Mr. Shockley and Mr. Bruno do working together on your behalf.

A. Well, okay. But I would like to -- if, if, really if I could get a chance -- I don't want no special treatment or anything, but really if you could clear the courtroom for me, please, just five minutes of your time, because I really wanted to talk to, to you. Because I have some things I really wanted to get off my chest now, for one -- the intimidation, you know, so I don't want to be intimidated by him. I want to be able to talk to you, so you can understand. Because I don't want you to think I have been wasting your time, because I've been carried back and forth in front of you a few times.

Q. Well, the only people in the courtroom are Court

Officers. So, why don't you go ahead and say what you have to say?

A. Okay, well, for two and-a-half years I've been incarcerated, okay. And Mr. Shockley's been my lawyer. Okay, so like he say, we've had an up and down relationship, but he gave me some mis-information at numerous times. And it caused me to end up taking a plea when my whole time was like -- man, when I'm innocent, this ain't right. Something ain't right about this lawyer. He led me to believe is that it's like, you're guilty. Well, not you're guilty but like you're going to be found guilty. You got no fighting chance. Yeah, we know this ain't right but if you say it you got to swallow over. You see what I'm saying?

So as a matter of fact, what I would like to do is, this is a letter that I wrote to Mr. Shockley, March 7, 2011. I'm writing you a letter voicing my concerns so that you -- so that it will be on paper. First off I would like to say that I think that you are a good lawyer but I feel that you are not giving me, giving my case your best. It's seems like you have an excuse why you can't do anything --

Q. I'll ask you to slow down because the Court Reporter has to take down what you're saying.

A. It seems like you have an excuse why you can't do anything -- everything that I ask you to do unless it involves sending me copies of some type of paper. I'm not

proud that it has been 17 or 18 months and you seem that you still are not very familiar with my case. I still have to explain to you all of the little details.

I remember that I had read a law book and told you that my Guidelines were around 20 or 25 years, but you told me that they weren't, that I was wrong. You made me believe for a long time that my Guidelines were much lower. Then you came back to tell me that you made a mistake and that I was right. You gassed me up and told me if I went to a proffer with Koshy that you would cut him off when he got up and he got out of hand. But instead you sit there quiet and let him scream, holler and threaten me and beat on the table while you tried -- while trying to impose on me and grilling me into saying what he wanted me to say instead of what was true. Now he has twisted everything that I said wrong and put me in an even deeper hole and all you can say is "oops."

At this point in time I want a severance -- I want a severance from Baugh and his wolf pack. And I know that you can get one if you type a motion in writing. I had told you this many times, but you had an excuse why you shouldn't -- why we shouldn't.

Please put your 30-something years, your 30-something years of experience to work for you. I am not, I am not trying to fight the United States of America, when I know that I did something, at least something wrong. But I'm

not taking those other four charges that I feel, that I feel that I'm innocent of. And still taking 20 to 25 years. What's the use of pleading out? That's not a plea bargain; that's a piece of numbers.

I need you to get my RCE so that I can get -- so that I can go back over them and make sure that I don't miss anything. I also need to file a Motion to Compel so that I can have time to look over evidence. Please file -- please file this motion. This is all that I can think of right now. But, please let me know if this is too much for you. If you're not going to do your best work on my case or if you just really think that you don't have enough time for a case this big -- because this is my life on the line. Not on the person who has done almost the least in my case that I'm facing more time. And from what you tell me there is nothing that we can do about it. I can't take that. Thank you, and I know that you are a great lawyer. And I know that you can do better than you are showing me. Please help.

Q. Okay.

A. So, when I wrote this letter this is basically -- this is me pleading with this man. I'm saying I think you're a good lawyer, though I don't know you, I think you're a good lawyer. But it was as if the whole time we spent over a year and-a-half going through ten phone calls. But during that time he came to see me multiple times. He brought his laptop

and we talked about the same things. He put me in situations where I felt like there's nothing I can do. It's not because of what I'm charged with or it's something charged because I know what I'm innocent for and I know what I'm guilty for and I come to see. But the whole thing is like -- I can't say -- I can say overwhelming because the whole thing is because it's like I have -- I have Koshy. So I asked -- I asked him before -- I'm like, now, do you think, if I had a different D. A., that the outcome would be different? And he kind of agreed, well, yeah, maybe, maybe just because of Koshy.

So to me really it was just getting like fear like -- like I say most of the time in this letter. Every time I ask you something -- okay, he hasn't been the type of lawyer that tells me from the beginning, well, there's a thing called a motion and this is what a motion is and this is what you do with a motion. This is this and this is that. What I have to do is go and ask other people who have paid lawyers who are locked up with me about stuff. That's how I learn -- I don't have a law degree. So I get educated by going to the extreme of taking my paperwork with the new stuff that I do have and having to give it to somebody else even though they could just hop on my case -- would be like please take this to your lawyer, man, and see what's up. My lawyer saying -- man, something ain't right to me. I mean I'm not an educated lawyer, but something ain't right to me.

And when it come back -- man, what's he trying to do? This is just plain old wrong right here. Or I have to ask him, what can I do? Well, have you filed any kind of motions or Motions to Compel? Well, what's a Motion to Compel? Oh, he ain't told you what that is? A Motion for Discovery. Because when I come back, I called Mr. Shockley and asked him -- he's like, well, where did you get this from? Well, Mr. Shockley, Mr. Shockley, can we file a Motion for Discovery? Well, you have the discovery; you have everything that Koshy gave me.

Well, this ain't -- this ain't all. Well, what else do you think we're supposed to have? Well, it's always an excuse. We can't do it. The Motion to Compel on certain things on my case -- well, we won't get it. It's like he already knows, he knows something I don't know. So, therefore this situation like -- hey, do you know there's something that -- what's going to happen? You know what I'm saying? What do you know that I don't know? Because it's like anything that I come to you, we can't do it or we shouldn't do it. But the whole thing is part of my case is planning -- how am I going to get my discovery?

If it's a thing called -- you know, if there's a pre-trial motion, why haven't I filed any? Have you noticed I've been here two years? Well, two and-a-half years now. Well, the only motion that we filed is a motion to get up

off -- to withdraw my plea or the Motion to Withdraw off my case. Nothing else. Nothing else.

So I'm sitting here by myself and I'm not fortunate enough to -- my people ain't got no money, so I ain't got no lawyer -- I don't know. They can't send me no law book. And if I'm sitting in a pod with a whole bunch of young dudes wrecking around and running around the pens and I can't -- I can't, I can't study my case. If I don't get the type of lawyer to come to me and say -- and tell me the case, how am I supposed to ask you something if I don't know what to ask you? So it's like he hopped in the middle of my case and go from, okay, we determine to put whatever going on and you can go to trial or you cooperate. You cooperate or you can go to trial. Or you can go to trial, but he makes the trial option even though he'll sit right here and tell you, well, this case is B.S. We know it is. This right here, we got a good argument on this. That don't make sense, do it? But still you allowed me to cop out to 15 to 25 years, when you sitting right here telling me it ain't right.

But then he come back and tells me, you know -- it's like he knows -- I don't know what to say, you know. At one point in time, I spent a lot of time -- now, look, I got six charges. Two of them I'm going in and pled guilty for them. Four of them I'm not going to take them because it ain't right. You know what I'm saying? Okay, but so he -- the

**whole thing with me. I need you to find that information, Mr. Shockley, if I can go on ahead and just be like, look, Mr. Nixon, I'm good for these, but I'm not good for that. Oh, well, you can't do that. I'm still unsure as to right now if I can do that or not. I mean, oh, you can't do that. And I ain't sure if I can do that or not. But to me it sounds kind of strange when he told me, you can't do that. So I'm saying what -- so why he explains to me you got to go in here and say I'm innocent of everything. Okay, but then what he told me was if I go in here and say I'm innocent of everything, I can go in here and beat those old felonies I say I'm innocent for them, but two charges I'm going to get the max, because I took it to trial. So, I'm like it's a hold-up. This ain't right. Yes, sir, that's the way it is. So that put me in a situation -- we'll never know. I'm already -- I'm kind of paranoid. I don't really feel like, oh, man, they just make a rule and break a rule. That's how a lot of us feel because we get misinformed, so we sit back and like, dang, the Government, they sick. The stuff that they telling us is like, well, we know it's not fair but if you don't know the law, you can't go back and say, well, what you just told me ain't right.**

**It don't make no sense that I got to take my paperwork and give to somebody else that takes it to their lawyer, because they got to pay a lawyer and then he comes in**

and say, well, you need to suppress this, you need to suppress that. And I come back to Mr. Shockley, we need to try to suppress this right here. You're not going to do that, Chris. Well, when he first came to get me, there's some things wrong with my -- I think you can suppress this warrant. Oh, man, your warrant, I already looked it over, man, you see if you in the State, the State they make big mistakes, the police they make all kinds of -- they do all kinds of things wrong. The Feds, they barely make mistakes.

Ask me again -- oh, man, it's 200 percent right. Not 100 percent; we told you 200 percent. And he said this in front of Paul Bruno one time. Something like, it's crazy.

I just now, some months ago get my search warrant. For the longest I asked him, what's wrong with my search warrant? Oh, man, it's like that thick, man, they got all kinds of paperwork in there. But it don't matter what kind of paperwork they got in there, because the thing is if there's something wrong with it. And I feel in my heart something's wrong with it because I know what went on.

Your Honor, I didn't mean to take up all your time, sir. But I have a lot of stuff on my case. He's right we did have an up and down relationship. A few times he was supposed to got off my case. One time he sent me a paper -- I don't know if I got it. I think I might have it. Which

was saying that it comes down -- I think this is the one. Comes now the Court-appointed counsel, William Shockley, and moves this hereby Court to relieve him as attorney of record for the Defendant Christopher Conyers because of irreconcilable conflict of interest. When it all boils down is one day he comes up here like -- now this happened after this letter right here, the one I just read you. He was mad because I said in the end, copy this letter. Because I had called him and said I want you to copy my letters and I want you to send them back to me so if something like this happens I can come in front you, and it ain't well, when you saying something that you can't back it up. Okay, so he came back -- you know what, I think this case might be a little to too much for me, or whatever like this. So we go through the whole thing to he's off the case. You sure you want me off the case? I have had 30 years of experience being a D. A. and this and all of that stuff right here. Well, okay. Now we had went back and forth until I say, okay, forget it, you can go.

So he wait probably about a week or two and he come back and say, well -- at first he sent me these papers. The paper don't have any blue stuff, in it, blue writing at the bottom. That's after he got about the blue writing and the black writing and all that stuff. That's how you mean you really filed it and everything, you know, is proper.

Okay, so he come back and say, well, you know, what all of something like a Bar or attorneys or something like that, a conflict would be okay because it's such a big case. So now he weasels -- he's back on my case.

And I'm not saying that he's not a good lawyer. But what I'm saying is to me he's been so ineffective and so -- had me so confused at times that I can't even trust this man right here. Even though this man come right on my case, Mr. Paul Bruno, and we having trouble because I'm so paranoid and messed up now, I don't trust none of them. And no disrespect, but I don't know what's going on.

THE COURT: All right. Mr. Bruno, do you feel that you can handle this case?

MR. BRUNO: Yes, sir.

THE COURT: All right, then you can do it without Mr. Shockley?

MR. BRUNO: I can, Your Honor.

THE COURT: All right, I'll relieve Mr. Shockley.

MR. SHOCKLEY: Thank you, Your Honor.

THE DEFENDANT: Thank you, sir.

***END OF TRANSCRIPT OF PROCEEDINGS***

**REPORTER'S CERTIFICATE**

**I, Charlotte H. Sloan, Official Court Reporter for the United States District Court for the Middle District of Tennessee, with offices at Nashville, do hereby certify:**

**That I reported on the Stenograph machine the proceedings held in open court on January 4, 2012; in the matter of United States vs. Conyers; Case No. 3-09-00240; that said proceedings in connection with the hearing were reduced to typewritten form by me; and that the foregoing Transcript is a true and accurate record of said proceedings.**

**This the 28th day of April, 2013.**

**s/s Charlotte H. Sloan**

**CHARLOTTE H. SLOAN**
**Registered Professional Reporter**
**Certified Shorthand Reporter**